THOMAS A. VARLAN, District Judge,
dissenting.
Because the district court was not clearly erroneous in finding that the defendant significantly impeded the investigation, which supported its application of the § 3C1.1 enhancement for obstruction, I respectfully dissent.
The majority relies on three specific facts as establishing that the defendant delayed — rather than “actually significantly impeded” — the investigation into the circumstances surrounding the death of Ms. Lares. Specifically, the majority points to an alleged statement by Ms. Brow, a cursory search of the defendant’s home on the night of Ms. Lares’s death, and the discovered drug paraphernalia during a search four days after Ms. Lares’s death. A close review of the record, however, indicates that these facts do not support a finding of clear error by the district court.
*342 First, the majority construes the alleged Brow statement that “they had been doing lines,” JA at 228, to conclude that the government was put on notice of drug use that night. This statement is drawn from one paragraph in the presentence investigation report (PSR) in which the PSR writer relates the defendant’s version of events. The majority reasons that the statement should be accepted as true since the government did not object to it before sentencing. Read in context, however, the fact to be accepted as true is not that Ms. Brow actually said they had been doing lines; instead, the fact to be accepted as true is that the defendant told the PSR writer that a police officer represented to the defendant that such a statement had been made. There is no evidence that Ms. Brow ever actually made such a statement to police officers or that police officers believed such a statement had been made. Thus, even accepting the statement from the PSR as true, the defendant’s statement to the PSR writer about what a police officer represented to the defendant about what Ms. Brow may or may not have said is not sufficiently definitive to put the government on notice of drug use that night.
Second, the majority points out that the government conducted a “cursory search” of the defendant’s home the night of Ms. Lares’s death. The significance of that fact in support of the majority’s conclusion is diminished when its context is considered. After arriving at the defendant’s vehicle to find a deceased Ms. Lares, officers, along with the defendant, returned to the defendant’s home where they met emergency personnel, because the defendant had told them Ms. Brow was unconscious there. Thus, officers conducted a brief search in support of the emergency personnel’s attempts to revive Ms. Brow, not as part of a crime scene investigation. Because the defendant had concealed some evidence of drugs already, see JA at 225, that cursory search did not yield any sign of drugs, except perhaps the alcohol Ms. Brow had consumed, and seemed to confirm the defendant’s lie that the group had not used drugs that night. Consequently, precisely because defendant lied, officers did not treat the defendant’s home as the crime scene that it really was until four days later, after the area had been cleaned.
Finally, the majority relies on the paraphernalia found four days later in the ceiling tiles of the defendant’s home once investigators realized on their own that the defendant’s home was the crime scene. The syringes and paper folds were found even though the area had been cleaned. The fact that the government found this evidence, however, does not change the fact that forensic evidence was lost when the area was cleaned.[4] While it may have been only four days since Ms. Lares’s death, that was enough time to destroy any forensic evidence of drug use the night *343 of Ms. Lares’s death, leaving only paraphernalia, although there is no evidence that the paraphernalia was related to Ms. Lares’s death or the events of that night. The four-day delay arose because the defendant lied to investigators, leading them to treat the vehicle as the crime scene and allowing enough time for the real crime scene to be unalterably changed.
Thus, the three facts relied upon by the majority indicate something more than just delay or attempts to impede the investigation and renders United States v. Williams, 952 F.2d 1504 (6th Cir.1991), distinguishable from the instant case. In Williams, an extortion case, the defendant’s lie came toward the end of an investigation, was disbelieved by investigators, and merely required the government to gather some additional, cumulative evidence. See 952 F.2d at 1515-16. By contrast, in this case, involving a death, the defendant’s lie came at the very outset of the investigation, it led the government to mistakenly treat the wrong location as the crime scene, which wasted investigative resources, and allowed the real crime scene to be cleansed of potential forensic evidence.
Because that forensic evidence was destroyed, the investigation was required to develop new evidence and ultimately became dependent on the testimony of witnesses, who faced their own criminal responsibility, and the paraphernalia found in the ceiling tiles. Just because the government was ultimately able to obtain this other evidence in support of its case does not negate the fact that the defendant’s he actually prevented investigators from correctly identifying and properly investigating the real crime scene. As the district court explained, the inability to properly identify and investigate a crime scene is a significant impediment to an investigation. See JA at 181-83. Thus, at the very least, the district court was not clearly erroneous in concluding that the defendant’s he was sufficient to justify the enhancement because it led investigators to the wrong crime scene, which wasted their resources and permitted the real crime scene to be cleaned, thereby resulting in the loss of forensic evidence. See United States v. Smart, 41 F.3d 263, 264-65 (6th Cir.1994) (citations omitted) (explaining “sentencing courts retain discretion in deciding whether a defendant’s actions constitute an obstruction of justice under the guidelines” and that discretion is abused where there is a “definite and firm conviction that the trial court committed a clear error of judgment”).
Because I would find that the district court was not clearly erroneous with regard to the § 3C1.1 enhancement, I would conclude that the district court properly calculated the advisory guideline range. Proceeding to a consideration of reasonableness under § 3553(a), I would conclude that the sentence was reasonable since the district court properly calculated the advisory guideline range, properly considered the relevant § 3553 factors, including the possible mitigating effect of one investigator’s inappropriate conduct, and demonstrated that it did not adopt a categorical approach. Accordingly, I would affirm the district court’s sentence.

. The majority characterizes this fact as speculation before acknowledging that "[a]dmittedly, a thorough search would have yielded evidence of drug use that night.” Majority Op. at 340 n. 3. The majority then excuses this fact by arguing "even if the officers found evidence of drug use that night, the government would not have more than it did after it found the syringes in the ceiling just four days later.” Id. This is not the standard, however, for applying the enhancement at issue in this case. The application of § 3C1.1 does not require the government to demonstrate that it would have more evidence if the defendant had not obstructed the investigation. Instead, the government must demonstrate that its investigation was "significantly impeded.” With that in mind, a district court is not clearly erroneous in concluding that the government has satisfied its burden by showing that the defendant's false statement caused investigators to treat the wrong location as the crime scene, thereby resulting in the inalterable change of the true crime scene.